Cite as 2022 Ark. App. 130

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-21-465

| | |
|---|---|
| LARRY EUGENE DAVIS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered March 16, 2022<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NOS. 66FCR-16-686 & 66FCR-16-1536]<br><br>HONORABLE R. GUNNER DELAY, JUDGE<br><br>AFFIRMED |

### BART F. VIRDEN, Judge

Larry Davis appeals the order of the Sebastian County Circuit Court revoking his probation and sentencing him to the Arkansas Department of Correction (ADC). On appeal, Davis challenges the sufficiency of the evidence supporting the court's decision. We affirm.

To revoke probation, the circuit court must find by a preponderance of the evidence that the defendant has inexcusably violated a condition of the probation or suspension. *Springs v. State*, 2017 Ark. App. 364, 525 S.W.3d 490. The State's burden of proof in a revocation proceeding is lower than that required to convict in a criminal trial, and evidence that is insufficient for a conviction thus may be sufficient for a revocation. *Id.* Furthermore, the State does not have to prove every allegation in its petition, and proof of only one

violation is sufficient to sustain a revocation. *Mathis v. State*, 2021 Ark. App. 49, 616 S.W.3d 274.

On appellate review, we uphold the circuit court's findings unless they are clearly against the preponderance of the evidence. *Id.* Because the determination of a preponderance of the evidence turns on questions of credibility and weight to be given to the testimony, we defer to the circuit court's superior position. *English v. State*, 2021 Ark. App. 219, 622 S.W.3d 649.

Davis pled guilty in March 2017 to the charges of possession of drug paraphernalia, a Class B felony (66FCR-16-686), and aggravated assault, a Class A misdemeanor (66FCR-16-1536) and was sentenced to five years' suspended imposition of sentence (SIS) on the felony and one year suspended on the misdemeanor. Davis's SIS was subject to his good behavior and payment of $60 a month toward his fines, costs, and fees.

In June, the State filed a petition to revoke Davis's suspended sentence for committing the new offenses of possession of methamphetamine with purpose to deliver and possession of drug paraphernalia (CR-17-1037). In December, he was sentenced to three years in the ADC, with seventeen years suspended.

Davis was released in February 2020, and on August 25, the State filed a petition to revoke on the original two offenses. The State alleged that on August 20, Davis had violated the conditions of his suspended sentence by committing the offenses terroristic act, possession of a firearm by certain persons, and possession of marijuana. Also, the State contended that he had failed to pay fines, costs, and fees as ordered, leaving an unpaid

balance of $3340. On October 6, the State filed an amended petition to revoke, contending that on August 20, Davis committed the offenses of simultaneous possession of drugs and firearms, possession of firearms by certain persons, first-degree criminal mischief, and possession of marijuana with purpose to deliver. Again, the State asserted that Davis had not paid his court-ordered fines, fees, and costs and had an unpaid balance of $3340.

The circuit court held a hearing on the State's petition. The State introduced the financial profile showing that Davis had made no payments toward his fines, fees, or costs and was in arrears $3340. The State also called witnesses who described the August 20 incident involving shots fired toward a Hertz dealership that damaged a vehicle on the lot. Two Fort Smith Police Department officers who investigated the shooting testified that Davis was inside his apartment when they arrived. They testified that a sawed-off shotgun, shell casings, and a substance later confirmed by the Arkansas State Crime Laboratory to be 36.5 grams of marijuana were found in Davis's apartment. Both officers stated that the apartment window facing Hertz had been broken out. The officers opined that the apartment did not seem to be occupied by anyone other than Davis, and there did not appear to be any damage to the apartment except for the broken window.

Defense counsel moved to dismiss, and the court denied the motion. Davis took the stand and testified that on August 20, several people were living in his apartment and that the shotgun and marijuana did not belong to him. He explained that at the time of the shooting, he was working, doing home repairs away from the area. Davis's son called him and told him to come back home because someone was breaking into his apartment. Davis

3

testified that he went home and waited for the police. Regarding his unpaid fines, costs, and fees, he explained that the pandemic had made it hard to find work, and the money he had saved to make those payments had been stolen during the break-in. Counsel renewed the motion to dismiss, which was denied.

The circuit court found that the State proved by a preponderance of the evidence that Davis had violated the terms and conditions of his probation on numerous bases: he simultaneously possessed drugs and firearms, committed criminal mischief by firing the shotgun at the Hertz dealership and hitting the car, and possessed marijuana with the purpose to deliver. Also, the circuit court found that Davis had failed to make any payments toward his fines and costs, and there was no evidence to indicate an inability to pay. Accordingly, the court revoked Davis's probation and sentenced him to 120 months in the Arkansas Department of Correction.[1] Following entry of the sentencing order, he filed a timely notice of appeal.

On appeal, Davis argues that there was insufficient evidence to prove that he failed to make court-ordered payments without a reasonable explanation, possessed the firearms or marijuana, or committed criminal mischief. We disagree and affirm.

Regarding the failure-to-pay grounds for revocation, it is axiomatic that

[w]here the alleged violation involves the failure to pay ordered amounts, after the State has introduced evidence of nonpayment, the burden shifts to the probationer to provide a reasonable excuse for the failure to pay. It is the probationer's obligation to justify his failure to pay, and this shifting of the burden of production provides an

_____

[1]There was no exposure time left on 66FCR-16-1536; thus, the court revoked Davis's SIS on 66FCR-16-686.

4

opportunity to explain the reasons for nonpayment. If the probationer asserts an inability to pay and provides evidence demonstrating that inability, then the State must demonstrate that the probationer did not make a good-faith effort to pay. Despite the shifting of the burden of production, the State shoulders the ultimate burden of proving that the probationer's failure to pay was inexcusable. If the probationer offers no reasonable explanation for his failure to pay, then it is difficult to find clear error in a trial court's finding of inexcusable failure.

*Springs*, 2017 Ark. App. 364, at 3, 525 S.W.3d at 493.

The State submitted a payment ledger showing Davis's failure to make any payments since his suspended sentence began in 2017. Davis explained that because of the pandemic, he was unable to find work, which made it impossible for him to pay fines, costs, and fees. The court found that Davis's order to pay began in 2017—long before the pandemic—and he did not make a single payment; thus, the circuit court's determination that Davis did not offer a reasonable explanation for his failure to pay is not clearly against the preponderance of the evidence. The court exercised its role as the finder of fact and made a credibility determination regarding Davis's explanation for nonpayment. Because only one ground is needed to support revocation, we need not address Davis's remaining challenges to the revocation of his suspended sentence. *Lamb v. State*, 2019 Ark. App. 494, 588 S.W.3d 409.

Affirmed.

GRUBER and BARRETT, JJ., agree.

*The Hudson Law Firm, PLLC*, by: *Grace Casteel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

5