Cite as 2025 Ark. App. 497

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-24-840

| | | |
|---|---|---|
| JERRY LINTON | | Opinion Delivered October 22, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT |
| V. | | [NO. 58CR-22-55] |
| STATE OF ARKANSAS | | HONORABLE JAMES DUNHAM, |
| | APPELLEE | JUDGE |
| | | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

**WENDY SCHOLTENS WOOD, Judge**

Jerry Linton appeals the Pope County Circuit Court's sentencing order revoking his suspended imposition of sentence (SIS) and sentencing him to five years' imprisonment and five years' SIS.[1] On appeal, Linton argues that the evidence was insufficient to support revocation. We affirm.

In April 2022, Linton pled guilty to aggravated assault on a family or household member (Kimberly Stanfield, his wife) and was sentenced, as a habitual offender, to two years in prison and four years' SIS. The SIS conditions included the requirements that Linton not

---

[1]This is a companion case to *Linton v. State*, 2025 Ark. App.498, an appeal from a revocation also handed down today. The circuit court held a combined hearing on both cases but issued separate sentencing orders revoking Linton's SIS in both cases. Linton has filed separate appeals, and today we hand down opinions in both.

commit a criminal offense punishable by incarceration and that he have no contact with the victim, Stanfield.[2] On June 5, 2024, the State petitioned to revoke Linton's SIS, alleging that he had violated the terms and conditions of his probation by committing new criminal offenses—specifically, aggravated assault on a family or household member and terroristic threatening. An amended petition for revocation was filed on July 12, which added the offenses of disorderly conduct, public intoxication, and violation of the no-contact order with Stanfield.

The circuit court held a revocation hearing on August 6, 2024. The State presented testimony from Charles Hendrix, a police officer with the Russellville Police Department, who said that he received a call in the early evening of April 30, 2024, that Linton was "drunkenly running around the neighborhood" and "they" wanted help finding him. He testified that when he arrived at 804 South Houston Avenue, where Linton and Stanfield lived, he saw Linton, Stanfield, and another female sitting on the steps. Linton was sobbing. According to Officer Hendrix, both Stanfield and Linton said Linton was going to go inside and sleep and stop "running around causing problems." The officer left.

Officer Hendrix said that he responded to another call from Stanfield from the same location around 1:20 a.m. on May 1. According to Officer Hendrix, Stanfield reported that Linton had become physical and she needed help. When Officer Hendrix arrived at the home, Linton was not there, and Stanfield was upset, shaken up, and "in kind of a disarray."

---

[2]The condition that Linton have no contact with Stanfield was handwritten on the list of conditions.

He said that Stanfield completed a witness statement with allegations against Linton, and Officer Hendrix completed a "domestic-violence lethality screen."

Russellville police officer Mario Lozano testified that he had contact with Linton at around 11:00 a.m. on May 1 near 804 South Houston Avenue. He said that when he arrived on the scene, Linton was upset, smelled of intoxicants, appeared to be under the influence of alcohol, and was in the passenger seat of a pickup truck with the door open. Officer Lozano asked Linton to step out of the truck, but he refused. When Officer Lozano attempted to grab him, Linton "just yanked from [him]." Officer Lozano called for backup, at which point they placed Linton under arrest and transported him to the detention center. Officer Lozano testified that Linton was upset and started "hitting his head . . . on the concrete slab . . . in the sally port," so they had to get several officers to restrain him.

Stanfield testified that she had been married to Linton since 2019, that she lived at 804 South Houston Avenue, and that Linton had been living with her at the time of these incidents. She said she called 911 the first of several times because Linton was "acting mental in front of the yard," banging his head against a tree, and the neighbors came from across the street trying to get him to calm down. She said Linton left after that. She said she heard him return later that night because he was making "a lot of noise . . . and [she] got a little scared." She said Linton was mad and intoxicated. She testified that she called 911 again because he woke her up, pushed her down, slung her on the bed, and squeezed her neck with his hands. She said that the pressure caused discomfort and she was scared but that she

3

could "pretty much breathe." A photo taken of Stanfield's neck after the police arrived shows red marks on the side of her neck.

Linton testified, denying that he had choked, hit, or touched Stanfield on May 1, and he said that he "would remember" if he had done that. He also said that he was "heavy handed" and thus that there would be more marks on her throat if he had done it. He said that he always leaves the house when they get in a fight because of his SIS, and he does not want to get in trouble. He testified that he and Stanfield are both heavy drinkers, that he drinks to get drunk, that he and Stanfield were drinking at the time of the incidents, and that they had together drunk a gallon and a half of whiskey. He said that Stanfield was impaired that day. He testified that he left the house after they had been drinking because they were arguing, and he visited his dad and a friend.

He also testified that he had not realized there was a no-contact order in connection with his SIS. According to Linton, his parole officer told him the no-contact order was in place only when he was on parole. He admitted that he signed the conditions of his SIS but questioned whether the handwritten no-contact condition had been on the form when he signed it. He said that he did not read the conditions but that all the conditions except the no-contact condition had been typed.

At the conclusion of the hearing, the circuit court found that Linton had violated the conditions of his SIS by violating the no-contact order and by committing the offenses of public intoxication, disorderly conduct, aggravated assault against a family or household member, domestic battery, and terroristic threatening. The court entered a sentencing order

4

on September 12, 2024, revoking Linton's SIS and sentencing him to five years' imprisonment and five years' SIS. Linton appealed.

In order to revoke a defendant's SIS, the circuit court must find by a preponderance of the evidence that the defendant has inexcusably violated a condition of the suspension. *Springs v. State*, 2017 Ark. App. 364, at 3, 525 S.W.3d 490, 492. To sustain a revocation, the State need only show that the defendant committed one violation. *Prackett v. State*, 2014 Ark. App. 394, at 2. We will not reverse a circuit court's finding on appeal unless it is clearly against the preponderance of the evidence. *Id.* Because the preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the superior position of the circuit court to decide these matters. *King v. State*, 2018 Ark. App. 278, at 3–4, 549 S.W.3d 407, 409.

On appeal, Linton argues that there was insufficient evidence that he committed any of the alleged offenses or that he inexcusably violated the no-contact condition of his SIS. Regarding public intoxication, Linton admits the testimony proved that he was intoxicated. He testified that he had been drinking all day, Stanfield said Linton "was intoxicated as he sat in their yard hitting his head against a tree," and Officer Lozano smelled intoxicants on Linton when Officer Lozano arrived on the scene. Linton contends, however, that this is not evidence that he was intoxicated in a public place because he was in a residential yard, which is not a public place. *See Weaver v. State*, 326 Ark. 82, 928 S.W.2d 798 (1996) (holding that the side yard of a private residence is not a public place within purview of statute prohibiting drinking of alcoholic beverages in public).

5

A person commits the offense of public intoxication if he or she "appears in a public place manifestly under the influence of alcohol" to the degree and under circumstances such that he "is likely to endanger himself or herself or another person or property" or "unreasonably annoys a person" in his vicinity. Ark. Code Ann. § 5-71-212(a) (Repl. 2024). "Public place" means "a publicly or privately owned place to which the public or a substantial number of people have access[.]" Ark. Code Ann. § 5-71-101(10) (Repl. 2024).

Officer Hendrix testified that he first encountered Linton after responding to a 911 call in which the caller reported that Linton was "drunkenly running around the neighborhood, and they wanted help to find him." He also testified that, after he arrived at the home, both Stanfield and Linton told him that Linton was going to go inside and "stop, basically, running around causing problems." Linton himself admitted that he left his home while still intoxicated to prevent further argument after Stanfield threatened to call the police. He also testified that he went to a friend's house, then to his father's house, and then back home. The court could have found from this evidence that Linton was intoxicated and on public streets in the neighborhood.

To revoke probation, the circuit court must find by a preponderance of the evidence that the defendant has inexcusably violated a condition of the probation or suspension. *Davis v. State*, 2022 Ark. App. 130, at 1, 642 S.W.3d 636, 637. This burden of proof is lower than that required to convict in a criminal trial; thus, evidence that is insufficient for a conviction may be sufficient for a revocation. *Id.* at 1–2, 642 S.W.3d at 637. We affirm the circuit court's finding that Linton committed the offense of public intoxication. Because only one ground

6

is needed to support revocation, we need not address Linton's remaining challenges to the revocation of his suspended sentence. *Id.* at 5, 642 S.W.3d at 639.

Finally, we remand the case to the circuit court for the limited purpose of entering an amended sentencing order that corrects a clerical error. Although the order being appealed states that Linton entered a negotiated plea of guilty and that he was found guilty and sentenced by a jury, Linton did not enter a plea but was found guilty by the circuit court at the revocation hearing and was sentenced by the court. Therefore, we remand for the circuit court to correct the sentencing order. *See Palmer v. State*, 2023 Ark. App. 178, at 7, 663 S.W.3d 436, 441.

Affirmed; remanded to correct sentencing order.

BARRETT and THYER, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Dalson Cook*, Ass't Att'y Gen., for appellee.